[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter came before this Court for hearing on April 30, 1993, (1) to resolve a disagreement between the parties regarding the record of the testimony of witnesses who testified at pre-trial hearings at Newport on April 15, 20 and 21, 1987, and (2) on the defendant's pro se objection to certifying any part of the record on appeal.
The parties, through counsel, have already agreed to a transcript of the trial, itself, and of the selection of the jury as part of the record on appeal. Apparently, it is not feasible to produce a stenographic transcription of the pre-trial hearings on motions by the defendant. The defendant moved: (1) to suppress property seized from a hotel room in Providence, where the defendant was arrested, on the ground that the seizure violated rights protected by the Fourth Amendment; (2) to suppress statements alleged to have been made by him while in custody as a violation of rights protected by the Fifth Amendment and (3) to suppress evidence of pre-trial and in-court identifications on Fourteenth Amendment grounds.
The parties have agreed that a narrative prepared by Ms. Janet Novack, the trial attorney for the defendant, from her notes and memory, as modified by Mr. Michael Burns, the trial attorney for the State, based on his notes and recollection may be substituted for the transcript as a record on appeal, with five exceptions, which are before the Court for resolution.
I
ALBERT HALL
On April 8, 1987 the Court began a combined evidentiary hearing to decide all of the issues of fact on all of the pending suppression motions. In the course of that hearing on April 15, 1987, the State called Albert Hall. He testified that he transported a person from Newport to Providence in his taxi early in the morning of July 22, 1986. He described the circumstances of his trip in some detail. He identified the defendant in a line-up that same day at about 6:00 p.m. in the Newport police station. He also identified the defendant in the courtroom during the hearing as the person he transported.
Ms. Novack notes that on cross-examination Mr. Hall said: "I guess I can make an identification because I saw him on TV." Mr. Burns contends that the witness stated in fact that he had seen the defendant's picture on TV many times, and that he said it helped his identification inasmuch as you recognize a person better after you've seen him a couple of times. I have reviewed my own notes and searched my own recollection. My notes read: "Has seen pics of Walker on T.V. Know them better." I have a clear recollection of the positiveness of this witness' identification of the defendant both at the line-up and in the courtroom. The witness did not suggest by his testimony that his identification was based on his seeing the defendant on television. His testimony simply states an obvious fact of life that the more you see a person, the better you get to know them. I am satisfied that Mr. Burns' modification is more accurate than Ms. Novack's version and should be certified as part of the record.
II
BRUCE RYERSON
Mr. Bruce Ryerson was called by the State as a witness on April 16, 1987. He was a dispatcher for Cozy Cab in the morning of July 22, 1986. He testified that he encountered a person whom he identified as the defendant at the dispatch office looking for transportation to Providence. He arranged for Al Hall to take the defendant to Providence. He was shown a photo spread at the Newport Police station of six faces on July 31, 1986. He picked out the defendant's picture as the person he encountered.
Ms. Novack says that the witness testified in cross-examination on April 20, 1987 that he might have seen the defendant's picture in the photo pack when he was shown it. Mr. Burns says that she is incorrect. He says that the witness testified that Sergeant Woods never told him that the subject's picture might not be in the photo pack. I have no notes or recollection of this particular testimony during this portion of the cross-examination. This witness never wavered in his choice of the defendant's picture. Mr. Burns is describing a typical line of defense cross-examination of a witness who makes a photo identification.
Ms. Novack also asserts that the witness testified that, when he looked at the photo pack, Sgt. Woods told him that the police had arrested the right person. Mr. Burns contends that once again Ms. Novack is incorrect. He says that the witness' testimony was that there was no pressure to pick out a particular photo and that something was said to him by Sgt. Woods after he picked the defendant's picture out that it was the right photo, but that he was not exactly sure what was said. The Court's note reads: "Said something about selected rite person." The Court is satisfied that this note means that Sgt. Woods said to the witness that he had selected the right person after he made his selection.
Ms. Novack asserts that the witness testified that he was not totally certain of his identification of the defendant and that there is nothing that would make him more certain of his identification in the courtroom. Mr. Burns adds that the witness was "pretty sure" of his identification. The Court's notes read: "Pretty sure. Not 100%. No change now." I clearly recall concluding that, while there was no constitutionally impermissible suggestivity in the identification procedure or the manner of its conduct, the question of the strength of the witness' identification might go not so much to its admissibility but more to its weight. I am satisfied that the witness testified unequivocally that he identified the defendant's picture within hours of the time he spent with him in the Cozy Cab office. I am also satisfied that he was "pretty sure", even if not one hundred percent certain of his identification and that his degree of confidence had not changed by the time of the hearing, and would not improve by the time of trial.
Ms. Novack's report that the witness might have seen the defendant's picture in the photo pack when it was shown to him is inaccurate and will not be certified. Mr. Burns' modification that the witness said that Sgt. Woods never told him that the subject's picture might not be in the photo pack is more likely to be accurate and may be certified as part of the record. The record on appeal as certified by this Court will be that Sgt. Woods told the witness that he had selected the right person after the witness selected the defendant's photograph. The record on appeal will indicate that the witness testified that he was pretty sure, but not one hundred percent certain of his identification.
III
DONN WOODS
Sergeant Donn Woods, of the Newport Police Department, was called as a witness by the State on April 20, 1987. Sgt. Woods travelled to Providence in the morning of July 22, 1986 because the defendant was in custody at the Providence police station. He and Inspector Eugene Sullivan, also a Newport police officer, transported the defendant by auto to Newport that day. He described some conversation with the defendant during the trip and the line-up proceedings at the Newport police station later that afternoon.
Ms. Novack claims that Sgt. Woods testified on direct examination that the defendant evoked (sic) his fifth amendment rights and asked about what happened in Newport. She says that Sgt. Woods also testified that the defendant stated he would rather talk about that later when he got back to Newport. Mr. Burns says that Sgt. Woods testified that the defendant did not evoke (sic) his fifth amendment rights.
The Court's notes regarding the testimony of Sgt. Woods about events in the Providence police station are as follows: On direct: — "Met suspect: Calvin Walker. In an interview room. Introed by White and Corley. Had asked to speak to someone from Newport. Went over rites with him. Did he sign: Yes. Initials = his. Questions about Newport. Wanted to know about condition of man in house. Not died. Corley had statement in typewriter. Never asked for attorney. Rather talk about Newport when we go back there." On cross: — "When first entered room, statement form in typewriter, but not completely. Reviewed rites form with him. `You already know what happened in the house.' Clothes not turned over to Newport @ time." I cannot say that the witness did or did not use the language mentioned by either attorney. I do remember quite clearly that Sgt. Woods' point was that the defendant was more than willing to talk to Newport police about his Newport activities but preferred to do so in Newport and not in Providence. It is unlikely that I would have overlooked a categorical refusal to answer police questions, whether it was an invocation of Fifth Amendment rights or not. I conclude that Sgt. Woods did not testify as reported by Ms. Novack.
Ms. Novack says that during cross-examination Sgt. Woods testified that the defendant stated that he had no objection to standing in a line-up but that he wanted to speak to an attorney first. Mr. Burns says that the actual testimony is that the defendant never asked to speak to a public defender before he went in the line-up. The Court's notes on this portion of the cross reads: "Attorney matter after fed." The Court's notes of the witness' direct examination indicate: "Def. to booking area. Processed. In cell. Hadn't eaten up to that time. Roast beef grinder + chips. Orange juice. In line-up. Told him he could get a lawyer. Telephone available. Yellow pages open to lawyers. Did not call a lawyer. Declined use of fone. P.D. office was called by Det. Sullivan. Lineup started before she arrived." I believe that in view of all the notes about direct testimony regarding affording the defendant an opportunity to have counsel present at the line-up I would not have failed to note a request to consult with counsel before the line-up. It is also unlikely that Sgt. Woods would have so directly recanted his direct testimony within minutes on cross. From the testimony it looks like it was Newport police who, in an abundance of caution, wanted a public defender present during the line-up; it was not the defendant. I conclude that Sgt. Woods did not testify as reported by Ms. Novack.
IV
SUPPRESSION RULING
The Court heard argument on the motions to suppress identification testimony on April 21 and 22, 1987. A decision was handed down orally from the Bench on April 22, 1987. The Court has no notes of its findings and rulings but has a clear memory of the photograph of the line-up. The defendant was wearing a distinctive and distinguishing pair of white trousers.
Ms. Novack reports that the Court found that viewing the totality of the circumstances there was a deprivation of due process in the line-up. Mr. Burns says that the Court felt that the use of the white pants may or may not have been suggestive, but that considering the totality of the circumstances the procedure was constitutional.
The Court did find that, even if under some circumstances the distinctive pants might have been so impermissibly suggestive as to give rise to a serious risk of mis-identification, in this case they were not because of the independent reliability of certain of the identifications. The Court was ruling that a distinctive garment worn by an accused in a line-up is not per se suggestive, but must be considered with all the circumstances surrounding the line-up.
The Court did not find as a fact that the manner in which the line-up was conducted deprived the defendant of due process. The Court's mind was evenly balanced on the question of whether or not the distinctive trousers were impermissibly suggestive. The Court's ultimate conclusion was that, as to certain witnesses, irrespective of any suggestiveness, the trousers were no factor in their identifications. The Court also noted that notwithstanding any suggestiveness some eye-witnesses to the criminal events on the night of July 21/22, 1986 were nonetheless unable to identify the defendant.
V
DEFENDANT'S PRO SE OBJECTION
The defendant has objected, pro se, to any reconstruction of any portion of the record, whether from the stenographer's notes or from the memory of counsel and the trial judge. He contends that the stenographer did not accurately record the pre-trial and trial proceedings, that her unavailability to transcribe her notes is the responsibility of the State, and that, due to the delay, the collective memories of counsel and the trial justice are not competent to reconstruct the record.
This Court has a limited jurisdiction over this case at this time. The defendant has claimed an appeal to the Supreme Court. That Court assumed jurisdiction over the case and ordered a procedure to establish the record on appeal. This Court is exercising its jurisdiction for the limited purpose of carrying out the Supreme Court's order in accordance with the Rules of Appeal.
The questions raised by the defendant implicate fact issues, which, if material, can be resolved only by a fact hearing. This Court is satisfied that it would be presumptuous for this Court to further delay transmission of the best possible record under the circumstances to the Supreme Court. Even the very best reported and transcribed records on appeal are not always perfect. If resolution of the defendant's pro se objection is necessary, it should be handled as a post-conviction matter as collateral to any claim of error reviewable on direct appeal. Highly skilled appellate counsel are of the opinion that the record on appeal, as transcribed and reconstructed, is adequate to present issues for review to the Supreme Court. It seems to this Court, with all due deference to the Supreme Court, that the Supreme Court is in the best position to resolve that issue.
Accordingly, the defendant's objection is overruled, and, treating his objection as a motion for a new trial, it is denied.
Appellate counsel for the defendant will prepare appropriate written orders to be entered to memorialize the Court's rulings.